

**U.S. Department of Justice**



*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| SLT | *271 Cadman Plaza East* |
| F.#2011R01661/NY-NYE-648Z | *Brooklyn, New York 11201* |

November 8, 2013

By Hand and ECF
The Honorable Dora L. Irizarry
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

               Re:   United States v. Arif Kurti
                     Criminal Docket No. 11-486 (S-1)(DLI)

Dear Judge Irizarry:

          The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for November 15, 2013.  For the reasons stated below, the government respectfully requests that the Court sentence the defendant within the applicable advisory Guidelines range of 125 to 135 months.

I.        Background

          In June 2007, agents from the New York Organized Crime Drug Enforcement Strike Force ("OCDESF") began an investigation into a large-scale narcotics distribution organization that was responsible for distributing large quantities of marijuana, cocaine, MDMA and prescription opiates throughout the United States, Canada and Europe.  (Presentence Report ("PSR") ¶¶ 4-6).

          Beginning in at least 2001, the defendant Arif Kurti coordinated the importation of illegal narcotics into the United States along with his brother, Ibrahim Kurti, and the elder brother of co-defendants Bajram and Selman Lajqi, co-defendant Gjavit Thaqi and others.  Specifically, Arif Kurti coordinated the shipment of bulk quantities of marijuana from Canada and the importation of thousands of MDMA pills from Europe.  (PSR ¶¶ 9-11, 48).  Kurti was subsequently arrested in Albania and served a five-year prison term for heroin trafficking from 2008 through 2012. (PSR ¶ 9).

While incarcerated in Albania, Kurti nevertheless continued coordinating drug trafficking activities through the use of smuggled cellular telephones and blackberry devices. Utilizing these surreptitious means of communicating with the outside world, Kurti arranged for his cousin, Gjavit Thaqi, to be supplied with high-grade Canadian marijuana from several sources of supply. (PSR ¶ 9, 48).   Intercepted T-III communications revealed that the source of supply delivered several marijuana shipments to Thaqi in the New York area, but that Thaqi began to become dissatisfied because the supplier could not produce the amount of narcotics required by Thaqi and was taking too long to arrange the deliveries.   After Thaqi complained to Kurti about his problems with the supplier, Kurti promised Thaqi that he (Kurti) was going to send someone to straighten out the supplier.   In subsequent conversations, Kurti acknowledged that his associate did, in fact, visit the supplier in Canada and resolved the situation on Kurti's behalf.   Based on an extremely conservative estimate, Kurti is being held responsible for between 400 and 700 kilograms of marijuana. (PSR ¶ 48).

In addition to the marijuana trafficking activities they jointly coordinated, Kurti and Thaqi also had extensive discussions about plans to obtain large quantities of cocaine for transport to Europe.   In particular, Kurti stated that he had cocaine dealers in Spain who would distribute upwards of 50 kilograms per week for him.   (PSR ¶¶ 48-49).   Kurti and Thaqi discussed obtaining cocaine in amounts of 150 to 200 kilograms at a time, and Thaqi reached out to two convicted cocaine traffickers in Colombia and Venezuela in an attempt to obtain these cocaine supplies.[1]   Ultimately, none of these plans came to fruition, as Kurti was indicted in the instant case before he finished serving his Albanian sentence and was extradited directly to the United States rather than being released.

On June 6, 2013, the defendant pleaded guilty, pursuant to a plea agreement, to a lesser-included offense of Count Three of the superseding indictment, charging the defendant with conspiracy to distribute and possess with intent to distribute at least 100 kilograms of marijuana, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).

---

[1] Thaqi met the two cocaine suppliers while they were all serving prison time together in the United States for cocaine trafficking convictions.   Both traffickers were subsequently deported back to their home countries following their release from custody.

As a result, he faces a statutory mandatory minimum sentence of 5 years.

II.  Discussion

A.  Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 543 U.S. 220, 258-60 (2005).  However, the Supreme Court held in Booker that sentencing courts must consider the Guidelines in formulating an appropriate sentence. Id.  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [a district court] may not presume that the Guidelines range is reasonable.  [A district court] must make an individualized assessment based on the facts presented."  Id. at 49-50 (citation and footnote omitted).

B.  The Advisory Guidelines Range Is 78 to 97 Months

The Probation Department has determined that the defendant's adjusted offense level is 30, the defendant is in Criminal History Category I,[2] and the advisory Guidelines sentencing range is 97 to 121 months' imprisonment.  (PSR ¶¶

---

[2] As discussed in the PSR, Kurti's heroin trafficking conviction is a foreign conviction and therefore does not receive any criminal history points under the U.S.S.G.  It can, and should, however, be considered an aggravating factor that further support's the application of a sentence within the advisory Guidelines range in this case.

126-40, 163).  The government supports a further two-point
reduction for global disposition pursuant to Guidelines Policy
Statement 5K2.0.  (PSR ¶178).  Including this reduction, the
resulting advisory Guidelines sentencing range for Count Three
is 78 to 97 months. Id.

        Defendant contends that the Probation Department
erroneously included a 2-level enhancement pursuant to U.S.S.G.
§ 2D1.1(b)(14)(c), which applies if a defendant receives a
supervisory role in the offense and was "directly involved in
the importation of a controlled substance."  Kurti first
contends that application of the enhancement constitutes an *ex
post facto* violation because it did not appear in the Guidelines
until an October 2010 amendment.  This argument is without
merit.  The government agrees that the defendant's conduct prior
to the effective date of the amendment – November 1, 2010 –
cannot be considered in determining whether the enhancement
applies.  However, there is no dispute that Kurti engaged in
significant drug trafficking activities in late 2010 into 2011,
despite the fact that he was incarcerated in Albania.  As
discussed above, Kurti actively negotiated for and coordinated
the shipment of marijuana from Canada into the United States
along with co-defendant Gjavit Thaqi.  When problems arose it
was Kurti, not Thaqi, who arranged to send an associate to
Canada to resolve the situation.  Accordingly, defendant's
contention that his incarceration in Albania "virtually
precludes any direct involvement with the importation of a
controlled substance" (Def. Ltr. at 3), is misplaced.

     C.   A Sentence Within the Guidelines Range Is
          Appropriate in This Case

        Based on the factors set forth in 18 U.S.C. § 3553(a),
a sentence within the Guidelines range is appropriate in this
case.

        A sentence within the advisory Guidelines range is
necessary to reflect the seriousness of the offense, promote
respect for the law and provide just punishment.  18 U.S.C.
§ 3553(a)(2)(A).  As noted above, the defendant's offense of
conviction is a serious crime that merit substantial punishment.
The defendant was not only involved in trafficking a minimum of
400 to 700 kilograms of marijuana – itself a major crime; he was
also involved in the importation of thousands of MDMA pills from
Holland, international heroin trafficking in Albania and
attempts to obtain large quantities of cocaine for distribution

in Europe (none of which are reflected in the advisory
Guidelines range).  Thus, a sentence within the Guidelines,
which is already artificially low compared to the true severity
of the defendant's criminal activities, is necessary to promote
respect for the law and just punishment.

        Moreover, this is not the defendant's first
involvement with serious criminal activity; nor was it a brief,
episodic event.  As discussed in the PSR, the defendant was
engaged in significant international narcotics trafficking as
far back as 2001.  He has trafficked, or attempted to traffic,
at least four different controlled substances – marijuana, MDMA,
cocaine and heroin – in at least four different countries (the
United States, Canada, Albania and Holland).  Despite being
arrested and jailed for his heroin trafficking activities, Kurti
continued to engage in large-scale narcotics trafficking even
while he was in prison.  Indeed, the most disturbing aspect of
the intercepted conversations is the fact that Kurti
continuously discussed his plans to <u>expand</u> his narcotics
trafficking activities upon his release from prison.  Thus, the
defendant's history reveals a disturbing pattern of escalating
criminality that was undeterred by previous contacts with the
criminal justice system.

        Accordingly, a sentence within the advisory Guidelines
range is also necessary to afford adequate deterrence to
criminal conduct and to protect the public from further crimes
of the defendant.  18 U.S.C. § 3553(a)(2)(B) & (c).  "Under
section 3553(a)(2)(B), there are two major considerations:
specific and general deterrence." <u>United States v. Davis</u>, No.
08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29,
2010).  Both considerations support the imposition of a serious
term of imprisonment in this case.  A sentence within the
advisory Guidelines range is necessary to deter others who are
in a position to choose between a law-abiding life and a life of
crime, and to protect the public from future crimes of the
defendant – who has already demonstrated his likelihood of
recidivism.

        Defendant contends that a non-Guidelines sentence is
appropriate because, among other factors, he allegedly spent an
extra 16 months in a harsh Albanian prison pending extradition
to the United States.  As an initial matter, the time Kurti
spent in an Albanian prison is entirely of his own making since
it was his conviction for heroin trafficking that resulted in

his incarceration, not the charges in the instant case.  Kurti was ordered extradited by the government of Albania on February 10, 2012.  According to the extradition order, Kurti was to be removed to the United States only <u>after</u> he had completed serving his Albanian sentence.  Accordingly, his removal to the United States was delayed until November 2012 because his Albanian sentence was not yet complete (he began serving the sentence on September 9, 2008), not because of any delay on the part of the government in securing his extradition.  There is absolutely no evidence supporting Kurti's argument that, but for the extradition request, he would have been released from prison earlier in Albania.  The mere fact that co-defendants in the Albanian case were released before Kurti does not establish that Kurti also would have been released.  There is no information in the record indicating when the co-defendants were arrested, what sentences they received, what the terms of their release were or whether their history, characteristics and role in the offense differed from Kurti to a degree justifying a shorter prison sentence.  Indeed, in the Albanian court order Kurti himself submitted as part of his sentencing memorandum, the Albanian judge noted that, as of the date of the order (August 13, 2011), Kurti "remains to serve a small part of his sentence given by the Albanian Court and it is possible for this person to leave <u>after serving his sentence</u> under Section 494 point 2 letter "c" of the Penal Proc. Code." (Ex. 2 to Def. Ltr. at 11) (emphasis added).  Accordingly, there is simply no justification for a downward departure based on time the defendant spent in Albanian prison since it was driven entirely by his own criminal conduct committed in Albania and had absolutely nothing to do with the charges filed against him in the United States.

III. <u>Conclusion</u>

        In this case, given all of the facts and circumstances discussed above, a sentence within the Guidelines range is necessary in order to achieve the purposes set forth in 18 U.S.C. § 3553(a).  Therefore, and for all of the foregoing reasons, the government respectfully submits that the Court should impose a sentence within the advisory Guidelines range of 78 to 97 months.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York

                       By:    /s/
                              Steven L. Tiscione
                              Assistant U.S. Attorney
                              (718) 254-6317

cc:  John Lanigan, U.S. Probation Officer (by E-mail)
     Joseph Gentile, Esq. (by ECF)
     Clerk of Court (DLI) (by ECF)