**Frankie & Gentile, P.C.**
Attorneys at Law
1527 Franklin Avenue
Suite 104
Mineola, New York 11501

James G. Frankie
Joseph A. Gentile

Phone: 516-742-6590
Fax: 516-742-6875

November 25, 2013

BY ECF
Hon. Dora L. Irizarry
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   SUPPLEMENTAL SENTENCING LETTER
      U.S. v. Arif Kurti, et al
      CR 11-486 (S1) (DLI)

Dear Judge Irizarry:

Based on the recent adjournment of sentencing scheduled for November 15, 2013, I thought it would be appropriate to respond to some of the issues raised in the government's letter of November 8th, as well as the supplemental probation addendum filed on November 13, 2013. Initially, I will address the argument pertaining to the alleged applicability of guideline 2D1.1(b)(14)(c), and I would thereafter address the question of a departure based on Mr. Kurti's incarceration within Albanian jails pending extradition.

I.   MR. KURTI WAS NOT DIRECTLY INVOLVED IN THE IMPORTATION OF A CONTROLLED SUBSTANCE.

Initially, it would appear that the government and the probation department have conceded that the allegations relating to incidents in 2001-2003 would clearly constitute an ex post facto application of the aforementioned guideline. Also, it should be noted once again that this guideline provision was never addressed in the plea agreement, and never constituted a basis for discussions in plea negotiations. Nevertheless, the government and the probation department have alternatively argued that there is evidence of Mr. Kurti's involvement in narcotics related conversations which reflect "direct involvement" in the importation of a controlled substance. Most respectfully, the conversations in question do not rise to the level of direct involvement for a number of reasons.

First, Mr. Kurti's status as an Albanian prisoner in extremely precarious conditions precluded any realistic attempt to be involved in a narcotics transaction. Secondly, the conversations which are alleged to be related to cocaine do not involve any specific date, time, place of departure or arrival, amounts of compensation or any other details which constitute the essence of a viable narcotics

transaction. Assuming, <u>arguendo</u>, that the very general conversations are related to some aspect of drugs, these conversations do not possess any detail relating to the alleged seller, the purported buyer and the mechanisms by which such a transaction would occur, so it is obvious that any such discussions did not lead to any conduct or action.

Regarding the allegations pertaining to marijuana in 2011, a co-defendant is supposedly dealing with an individual identified only as Alex and complains to Mr. Kurti on the phone that Alex is not "doing what he is supposed to do," which is making the co-defendant "look bad with his buyers." The transaction, if any exists, occurs between the co-defendant and this other individual - it does not involve Mr. Kurti directly in any manner, nor is there any indication that he is involved in this transaction in any manner (i.e. supply, delivery, receipt of profits, etc.). As strictly an accommodation to the complaining co-defendant, Mr. Kurti asserts that he can have someone speak to Alex about the lack of communication, but there is no indication of direct involvement in the transaction.

In any event, the guideline contemplates that a manager or supervisor who engages in <u>direct</u> involvement with importing a controlled substance should receive an enhancement. It is submitted that the guideline should not be applied to a circumstance where a manager or supervisor is incarcerated in a foreign jail and is engaging in highly speculative conversations that do not support active or direct connections to a transaction and, in particular, transactions that never in fact occur at all. In addition to the fact that the guideline was never contemplated or discussed during significant plea negotiations, it is submitted that it would be inappropriate to apply it in this context.

II. THE TIME SERVED BY THE DEFENDANT PENDING EXTRADITION WARRANTS CONSIDERATION OF A DEPARTURE

In the sentencing submissions of the government and the probation department, both parties suggest it is unclear regarding the amount of time Mr. Kurti was scheduled to serve on his original Albanian drug conviction, so that the delay in extradition may not have been occasioned by the extradition process. However, the government is ignoring some aspects of the statements within the judicial decision to understand the nature of the application. The Elbasan District Court decision indicates that Mr. Kurti has a "small part of his sentence given by the Albanian court" remaining, and indicates pursuant to the Albanian Penal Procedure Code, he would be entitled to leave Albania once the period of his sentence has expired. Accordingly, the prosecutor in Elbasan made a motion, based on the filing of the Eastern District of New York indictment, requesting a specific period of incarceration predicated on the filing of the arrest warrant in the Eastern District dated July 7, 2011.

Based on this filed motion, the court indicated that it would impose a sentence of two months imprisonment predicated on the application of the prosecutor in Elbasan. Obviously, if Mr. Kurti's original sentence was to expire into calendar year 2012, there would be no reason for a prosecutor to file a motion to extend his period of imprisonment pursuant to the filing of the arrest warrant. Counsel has received anecdotal information (i.e. Albanian embassy) that good time credit in Albania typically may involve up to a one-third sentence reduction and, based on other factors such as disciplinary matters, could extend to 75% of incarceration. The import of the previously attached

decision is that the prosecutor in Elbasan found it necessary to file a motion to insure that Mr. Kurti would remain in custody pending extradition.

Of course, sixty days from August 13, 2011 would mean that the order required him to remain in custody until November of 2011. However, there is no explanation for his failure to be extradited for one year from that period of time, as the decision infers that he had completed his sentence in Albania and was being held pursuant to the extradition process. For this reason, whether the court credits one year of jail time, or any amount of discretionary jail time that is appropriate, some consideration should be given for Mr. Kurti's incarceration under the conditions outlined in the Counsel of Europe Anti-Torture Committee Report, addressing the horrific conditions of incarceration in Albanian facilities. Our office will continue to obtain additional information from Albanian officials and we will advise the court and all parties of any supplemental information upon receipt prior to sentencing on January 8, 2014.

CONCLUSION

Obviously, the 2013 Manual contains Guideline 2D1.1(b)(14)(c); however, this provision did not come into existence until 2011, and to apply it to conduct in 2001-2003 would constitute an ex post facto violation. The 2010-2011 allegations (discussions allegedly about cocaine and the marijuana/Alex conversation) do not manifest "direct" involvement in the importation of a controlled substance by a manager or supervisor. Accordingly, the guideline provision should not be applied on the facts of this case. If the Court agrees with this analysis, the guideline estimate would concur with the plea agreement of Level 28 (78-97 months); thereafter, the application of the two point logjam adjustment would result in a finding of Level 26 (63-78 months).

The extradition issue is a departure/variance question which can be factored into providing a lower sentence, although the defense recognizes that a mandatory minimum sentence of sixty (60) months is required.

For these reasons, based on the recent adjournment of sentence, our office thought it would be appropriate to further develop these arguments prior to the actual sentencing of Mr. Kurti.

Very truly yours,

Joseph Gentile

JG:pmf